FILED

1  STEVEN T. GUBNER - Bar No. 156593
   LARRY W. GABRIEL - Bar No. 68329
2  NICHOLAS A. ROZANSKY - Bar No. 2    2010 JUN 22  PM 4:40
   EZRA BRUTZKUS GUBNER LLP
3  21650 Oxnard Street, Suite 500          DISTRICT COURT
   Woodland Hills, CA  91367           CENTRAL DIST. OF CALIF.
4  Telephone:  818.827.9000                  SANTA ANA
   Facsimile: 818.827.9099
5  Email:    sgubner@ebg-law.com
             lgabriel@ebg-law.com
6             nrozansky@ebg-law.com

7  Attorneys for Plaintiff
   PROFESSIONAL BUSINESS BANK
8
                    UNITED STATE DISTRICT COURT
9
          FOR THE CENTRAL DISTRICT OF CALIFORNIA
10

11 PROFESSIONAL BUSINESS BANK,      Case No. CV 10-4614 GAF
   a California Corporation,                    (AGRx)
12
                  Plaintiff,        COMPLAINT FOR:
13                                    (1) BREACH OF CONTRACT;
        vs.                          (2) DECLARATORY RELIEF;
14                                       AND
   FEDERAL DEPOSIT INSURANCE          (3) SPECIFIC PERFORMANCE
15 CORPORATION in its capacity as
   Receiver for First Heritage Bank, N.A.,  DEMAND FOR TRIAL BY JURY
16 and DOES 1 through 10, inclusive,
                                                      BY FAX
17              Defendants.

18

19       Plaintiff Professional Business Bank, Inc. ("PBB") alleges as follows:

20                            **PARTIES**

21       1.    PBB is, and at all material times was, a California Banking

22 Corporation, qualified to do, and doing, business in the State of California.

23       2.    Defendant Federal Deposit Insurance Corporations ("FDIC") is the

24 agency charged by law with, among other duties, administering the Federal

25 Deposit Insurance Act and the federal bank deposit insurance system.  The FDIC is

26 the receiver of and successor-in-interest to First Heritage Bank, N.A ("Heritage.")

27 The FDIC is sued in its capacity as the Receiver of First Heritage Bank, N.A.

28

                              -1-
                            Complaint
   225469/2435.007

1   ("FDIC-R").

2      3.    PBB is informed and believes and thereon alleges that the true names

3 and capacities of defendants named herein as DOES 1 through 10, whether

4 individual, corporate, associate, or otherwise, are unknown to PBB, who therefore

5 sues said defendants by fictitious names.  PBB is informed and believes, and

6 thereon alleges, that each of the defendants designated herein as DOE is legally

7 responsible in some manner for the occurrences and/or omissions herein alleged,

8 and that PBB's damages as herein alleged were proximately caused by the acts or

9 omissions of said defendants, and each of them.  PBB will amend this Complaint

10 to show the true names and capacities of the defendants named herein as DOES 1

11 through 10 when same have been ascertained.

12      4.    PBB is informed and believes and thereon alleges that at all times

13 mentioned herein, each defendant was acting as the agent, employee, principal,

14 officer, partner, joint venturer, servant, director or other representative of one of

15 more of the remaining defendants, and, in committing the acts and/or omissions

16 mentioned herein, was acting within the course and scope of such employment,

17 agency, partnership, joint venture, or other relationship, and with the knowledge

18 and consent of the remaining defendants.

19                 **JURISDICTION AND VENUE**

20      5.    This action arises under the Constitution and laws of the United

21 States, including, without limitation, the Federal Deposit Insurance Act ("FDIA"),

22 12 U.S.C. § 1811 et seq., as amended.  This Court has jurisdiction over the subject

23 matter of this action pursuant to 12 U.S.C. §§ 1819(b)(2)(A) and 1821(d)(6).

24      6.    Venue is proper in the Court under 12 U.S.C. § 1821(d)(6).

25                 **GENERAL ALLEGATIONS**

26      7.    On or about December 5, 2007, PBB entered into a written Loan

27 Agreement dated December 5, 2007 (the "2007 Loan Agreement") pursuant to

28

-2-
Complaint

225469/2435.007

1  which PPB agreed to extend to Al's Garden Art, Inc. a loan in the original amount

2  of $6,000,000. ("Al's Garden Loan")

3       8.     On or about December 27, 2007, PBB and Heritage entered into a

4  written Loan Participation Agreement (the "Loan Participation Agreement"),

5  pursuant to which PBB sold, and Heritage purchased a 50% interest in the Al's

6  Garden Loan originated by PBB ("Heritage's Participation Interest.") A true and

7  correct copy of the Loan Participation Agreement is attached as Exhibit "A," the

8  terms of which are incorporated herein by this reference as though fully set forth

9  herein.

10      9.     A material term of the Loan Participation Agreement is the following:

11  "Participant [Heritage] shall not sell, pledge, assign, subparticipate, or
    otherwise transfer its Participation Interest under the Loan without

12  first obtaining prior written consent of the Originating Institution
    [PBB], which consent shall not be unreasonably withheld.  The

13  Originating Institution shall have a right of first refusal on any
    bonafide offer made to purchase, subparticipate, or otherwise acquire

14  the Participant's Participation Interest in the Loan by a third party."

15      10.    On or about July 25 2008, Heritage was closed by the Office of the

16  Comptroller of the Currency (OCC).  Subsequently, the FDIC was named Receiver

17  of Heritage and the FDIC-R assumed the right to sell the assets of Heritage.

18      11.    In or around January 2009, FDIC-R offered to sell Heritage's

19  Participation Interest in the Al' Garden Loan to Commerce First Financial, Inc. a

20  Texas Corporation ("CFF").  Prior to the time of the offer, the FDIC-R did not

21  obtain the written consent of PBB to sell, pledge, assign, subordinate or otherwise

22  transfer Heritage's Participation Interest in the Al' Garden Loan to CFF.

23      12.    On or about January 9, 2009, CFF purchased Heritage's Participation

24  Interest from the FDIC-R, thereby acquiring Heritage's interest in the Loan

25  Participation Agreement (the "Purchase").  CFF purchased Heritage's Participation

26  Interest from the FDIC-R for $1,471,298.46, a near 50% discount.

27

28

225469/2435.007

13. At no time prior to or after the purchase did the FDIC-R advise PBB that it was selling Heritage's Participation Interest, nor did the FDIC-R request the consent of PBB to sell its interests in the Al's Garden Loan, nor did the FDIC-R offer to sell its interest in the Al's Garden Loan to PBB as required to do so under the terms of the Loan Participation Agreement.

### PBB'S PROOF OF CLAIM

14. On or about October 22, 2009, FDIC-R sent a letter to PBB's counsel whereby the FDIC-R consented to extend the time for PBB to file a Proof of Claim to on or before January 20, 2010 (the "FDIC-R Letter"). A true and correct copy of the FDIC-R Letter is attached as Exhibit "B".

15. On or about November 16, 2009, PBB filed its Proof of Claim with the FDIC-R asserting that the FDIC-R breached its contractual obligations to PBB by failing to abide by the terms of the Loan Participation Agreement in that the FDIC-R failed to afford PBB its right of first refusal. PBB demanded that the FDIC-R either (1) tender to PBB Heritage's interest in the Al's Garden Loan for the amount paid by CFF, or (2) that PBB's claim be approved as the difference between the amount CFF paid for the Participation Interest ($1,471,298.46), and the amount that is actually collected against the underlying loan, and (3) pay PBB's attorney's fees and costs as provided for in the Loan Participation Agreement. A true and correct copy of PBB's Proof of Claim is attached as Exhibit "C" and is incorporated herein by this reference.

### THE FDIC-R'S DENIAL OF PBB'S PROOF OF CLAIM

16. In a letter dated April 30, 2010, FDIC-R provided PBB notice that PBB's claims had been disallowed. A true and correct copy of the FDIC-R's notice is attached as Exhibit "D".

17. The FDIC-R's notice stated that PBB's claims were disallowed because: " . . . the damages were not fixed and certain at the date of the

-4-
Complaint

1   appointment of the Receiver."

2       18.    The notice provides no additional detail or explanation regarding the

3   FDIC-R's decision.

4       19.    Pursuant to 12 U.S.C. § 1821(d)(6), if PBB disagrees with the

5   disallowance, it has the right to file a lawsuit on its claim in the United States

6   District Court within 60 days from the date of the notice.

7                    **FIRST CAUSE OF ACTION**

8               **[Breach of Contract against FDIC and Does 1 through 10]**

9       20.    PBB realleges and incorporates by this reference, as though fully set

10   forth herein, each and every allegation in paragraphs 1 through 19 above.

11       21.    PBB has at all times performed the terms of the Loan Participation

12   Agreement in the manner specified therein, save and except as excused from such

13   performance by the failure of the FDIC-R to perform its obligations under the

14   terms of the Loan Participation Agreement.

15       22.    Cross-Defendants FDIC-R and DOES 1-10 ("Defendants") breached

16   their obligations to PBB under the terms of the Loan Participation Agreement as

17   set forth in paragraphs 8 through 13 above.

18       23.    As a direct and proximate result of the Defendants' failure and refusal

19   to perform their obligations under the Loan Participation Agreement, PBB has

20   been damaged in an amount to be proved at the time of trial in this matter in excess

21   $1,500,000.

22       24.    As a further and direct and proximate result of the FDIC breach of its

23   contractual obligations under the Loan Participation Agreement, PBB has incurred

24   attorney's fees and costs, which pursuant to the terms of the Loan Participation

25   Agreement it is entitled to recover.

26

27

28

225469/2435.007

## SECOND CAUSE OF ACTION

### [Declaratory Relief against FDIC and Does 1 through 10]

25.    PBB realleges and incorporates by this reference, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 24 above.

26.    An actual controversy has arisen and now exists between PBB, on the one hand, and the Defendants, on the other hand, concerning the Loan Participation Agreement and whether CFF can participate therein without PBB first being afforded its right of first refusal. PBB contends that the Loan Participation Agreement requires that it be afforded the right of first refusal with respect to the acquisition of Participant's Participation Interest in the Al's Garden Loan. Conversely, CFF contends that it properly purchased the Participant's Participation Interest, and therefore succeeded to the same rights Heritage had under the Loan Participation Agreement, notwithstanding the fact that PBB was not afforded its right of first refusal.

27.    PBB desires a determination that CFF's purported acquisition of the Participant's Participation Interest was not lawful because PBB was not afforded its right of first refusal under the Loan Participation Agreement and CFF cannot participate in the Loan Participation Agreement unless and until PBB is extended the right expressly provided under the Loan Participation Agreement, to acquire Participant's Participation Interest. PBB seeks a further declaration that CFF is entitled to assume Participant's Participation Interest only if PBB is afforded the right of first refusal mandated by the Loan Participation Agreement, and formally opts not to exercise it.

28.    Moreover, PBB desires a declaration that any transaction consummated between CFF and the Federal Deposit Insurance Corporation relating to participation in the Agreement is null and void and of no force and

225469/2435.007

1  effect as such a transaction would necessarily have violated the terms of the Loan

2  Participation Agreement, unless and until PBB is given the opportunity to exercise

3  its right of first refusal and formally declines to exercise it..

4      29.   Finally, PBB seeks a declaration that it be given the opportunity to

5  exercise its right of first refusal under the terms of the Loan Participation

6  Agreement.

7                      **THIRD CAUSE OF ACTION**

8           **[Specific Performance against FDIC and Does 1 through 10]**

9      30.   PBB realleges and incorporates by this reference, as though fully set

10 forth herein, each and every allegation contained in paragraphs 1 through 29

11 above.

12     31.   Defendants, and each of them, through their conduct, have failed to

13 comply with the Loan Participation Agreement in that they have not afforded PBB

14 the opportunity to exercise its right of first refusal.

15     32.   PBB has performed all conditions, covenants, and promises required

16 of it to be performed in accordance with the terms and conditions of the Loan

17 Participation Agreement, except as prevented or excused by the conduct of

18 Defendants.

19     33.   Defendants, FDIC and Does 1-50, have refused and failed to allow

20 PBB to exercise its right of first refusal as required by the Loan Participation

21 Agreement.

22     34.   PBB is informed and believes, and thereon alleges, that as a result of

23 Defendants' refusal to permit PBB to exercise its right of first refusal, PBB has

24 suffered consequential damages according to proof at trial.

25     35.   PBB does not have an adequate remedy at law and therefore seeks an

26 order of this court requiring the Defendants to comply with the terms and

27 conditions of the Loan Participation Agreement.

28

225469/2435.007

## PRAYER

WHEREFORE, Plaintiff, PROFESSIONAL BUSINESS BANK, prays for judgment as follows:

**On the First Cause of Action:**

1.     For compensatory damages according to proof at trial;

2.     For general damages according to proof at trial;

**On the Second Cause of Action:**

3.     For a judicial determination that CFF's purported acquisition of the Participant's Participation Interest was not lawful because PBB was not afforded its right of first refusal under the Loan Participation Agreement;

4.     For a declaration that CFF cannot participate in the Loan Participation Agreement unless and until PBB is extended the right expressly provided under the Loan Participation Agreement, to acquire Participant's Participation Interest;

5.     For a declaration that CFF is entitled to assume Participant's Participation Interest only if PBB is afforded the right of first refusal mandated by the Loan Participation Agreement, and formally opts not to exercise it;

6.     For a declaration that any transaction consummated between CFF and the Federal Deposit Insurance Corporation relating to participation in the Loan Participation Agreement is null and void and of no force and effect as such a transaction would necessarily have violated the terms of the Agreement, unless and until PBB is given the opportunity to exercise its right of first refusal and formally declines to exercise it;

7.     For a declaration that PBB be given the opportunity to exercise its right of first refusal under the terms of the Loan Participation Agreement;

**On the Third Cause of Action:**

8.     That Defendants offer PBB its purported rights under the Loan Participation Agreement on the identical terms that CFF purchased its alleged

1   interest in the Loan Participation Agreement;

2       9.    For injunctive relief precluding Defendants from selling any interest

3   in the Loan Participation Agreement;

4       10.    For consequential damages according to proof;

5       11.    For reasonable attorney's fees as permitted under the Agreement;

6   **On All Causes of Action**

7       12.    For reasonable attorneys' fees and costs of suit herein; and

8       13.    For such other and further relief as the Court deems just and

9   appropriate under the circumstances.

10                      **DEMAND FOR TRIAL BY JURY**

11   Plaintiff hereby demands trial by jury.

12

13   Dated: June 21, 2010                     EZRA BRUTZKUS GUBNER LLP

14

15                                        By:

16                                         Nicholas A. Rozansky

17                                         Attorneys for Plaintiff,
                                      PROFESSIONAL BUSINESS BANK

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# LOAN PARTICIPATION AGREEMENT

| Originating Institution: | Professional Business Bank<br>250 North Orange Street<br>Glendale, CA 91203 | Participant: | 1st Heritage Bank<br>3281 E. Guasti Road, Suite 400<br>Ontario, CA 91761 |
|---|---|---|---|

THIS NON-RECOURSE LOAN PARTICIPATION AGREEMENT, dated December 27, 2007, is made and executed between Professional Business Bank ("Originating Institution") and 1st Heritage Bank ("Participating Institution" or "Participant").

UNDERLYING LOAN. The Originating Institution has agreed to make, or has made, a loan to Al's Garden Art, Inc. ("Borrower"), in the principal sum of Six Million and 00/100 Dollars ($6,000,000.00) ("Loan") pursuant to the Note dated December 5, 2007 ("Note"). To secure the Note, Borrower agreed to deliver to the Originating Institution certain Collateral, mortgages, security agreements, and other agreements. The Note and such other documents are collectively referred to as "Loan Documents." The Originating Institution desires to sell and grant to the Participant, and the Participant desires to purchase and accept from the Originating Institution, a participation interest in the Originating Institution's rights and obligations under the Loan subject to the terms and conditions set forth herein.

THE ORIGINATING INSTITUTION AND THE PARTICIPANT AGREE AS FOLLOWS:

SALE OF LOAN PARTICIPATION INTEREST. The Originating Institution hereby sells to the Participant, and the Participant hereby purchases from the Originating Institution a ratable participation in the Originating Institution's rights and obligations with respect to the Loan, Loan Documents, and Collateral up to the following aggregate maximum amount and in the following percentage (hereinafter referred to as "Participation Interest"):

Maximum Amount $3,000,000.00          Participation Interest 50.0000%

The sale is made by the Originating Institution without recourse and shall in no way be construed as an extension of credit by the Participant to the Originating Institution. The Originating Institution's interest in the Loan and Participant's interest shall be ratably concurrent and neither shall have priority over the other.

PAYMENT MATTERS.

Funding Disbursement. The Originating Institution shall give at least one (1) business day prior notice to Participant of the date the funds are to be delivered to the Originating Institution. On such a date, Participant shall remit to the Originating Institution the funds equaling its Participation Interest in the Loan. The funds shall be available for immediate use by Originating Institution at its office by 11:00 AM, Pacific Standard Time, and, to the extent available, Originating Institution shall be entitled to debit Participant's account at Originating Institution by an amount equaling its Participation Interest in the Loan. Upon the Originating Institution's receipt of such an amount in full, the Participant's participation in the Loan shall become effective, and the Originating Institution will promptly send to Participant a Participation Certificate confirming Participant's participation in the Loan.

Administration of Loan by Originating Institution. The Originating Institution shall be empowered to service and manage the Loan in the ordinary course of its business in the same manner as it services similar loans in its own portfolio. The Originating Institution shall have the exclusive right to collect from the Borrower or any Guarantors, third parties, or otherwise on account of the Loan, including, without limitation, principal, interest, fees, and other payments whether such sums are received directly from Borrower, any Guarantors, or any other persons, or as amounts payable by exercise of the rights of offset by the Originating Institution of any kind against the deposits, accounts, money, or other property of Borrower or any Guarantors.

Loan Fees. The Originating Institution agrees to pay to Participant an amount equal to its Participation Interest in any payment of late fee, and loan origination fee received by the Originating Institution from the Borrower.

Interest Rate Earned by Participant. After the purchase by the Participant of its Participation Interest and the funding of the Loan to the Borrower by the Originating Institution, Participant shall earn interest at the rate of Wall Street Journal Prime plus 0.75%..

Application of Payments. Upon receipt of a payment of principal, interest, fees, or other payments under the Loan, or whenever Originating Institution makes an application of funds to the Loan, (including, without limitation, any payment or application from any property or deposit held or taken by the Originating Institution in connection with the Loan, whether as Collateral or otherwise), Originating Institution will promptly pay to the Participant, in U.S. Dollars, an amount equal to the Participant's Participation Interest of each amount received and applied by the Originating Institution in payment of principal, interest on the Loan, shared fees, or other payments in respect of the Loan. Such application of funds shall be on a strictly pro rata basis, in proportion to Participant's Participation Interest in the Loan.

If any such payment is received by the Originating Institution before 12:00 PM, Pacific Standard Time, on any business day, the Originating Institution shall pay Participant that same business day. If any such payment is received by the Originating Institution after 12:00 PM, Pacific Standard Time, the Originating Institution shall pay Participant before the end of the next business day. Principal and interest payments and/or other amounts collected by the Originating Institution under the Loan shall be held in trust for the benefit of the Participant, until such funds, representing the Participant's Participation Interest in such payments, are actually paid to and received by the Participant. Any amount due to Participant that is not paid as provided in this paragraph shall accrue interest at the Federal Funds Rate for each day it is held by the Originating Institution.

Rescission of Payments. Participant shall repay to the Originating Institution any sums paid to Originating Institution by Borrower and distributed by the Originating Institution to Participant which the Originating Institution shall be required to return to Borrower or to any receiver, trustee, or custodian for Borrower pursuant to a court order, judgment, settlement, or for any other reason.

REPRESENTATIONS AND WARRANTIES BY ORIGINATING INSTITUTION. The Originating Institution makes the following representations and warranties to the Participant:

Credit Information. The Originating Institution has provided Participant copies of all relevant credit and other information currently in the possession of the Originating Institution that was used as a basis for its decision to make the Loan to the Borrower.

Loan Documents. The Originating Institution has additionally provided Participant with copies of the Loan Documents that were executed (and/or that are to be executed) by the Borrower and, where applicable, any Guarantor. However, the Originating Institution makes no representations or warranties, express or implied, to the Participant, as to the validity and enforceability of the Loan Documents, other than that: (a) the Loan Documents were validly executed by the Borrower and, where applicable, any Guarantor under the Loan; (b) to the extent required by applicable law, the security instruments under the Loan were or will be properly recorded and/or filed in order to result in the valid perfection of a security interest on the Collateral subject to such instruments; and (c) to the extent required by applicable law, the Originating Institution has taken, will take, and will continue to take whatever additional actions may be necessary and proper to validly perfect and maintain a security interest in the Collateral securing the Loan.

No Current Default by Borrower. As of the date of the Participant's purchase of its Participation Interest: (a) there are no events of default under the Loan; (b) the Loan has not been classified on the books of the Originating Institution; (c) the Loan is presently on accrual status; and (d) the terms of the Loan have not previously been renegotiated as the result of a prior deterioration in the Borrower's financial condition.

## LOAN PARTICIPATION AGREEMENT
### (Continued)

**Loan Collectibility.** The Originating Institution makes no representations or warranties, express or implied, to Participant, as to the collectibility of the Loan, continued validity and/or sufficiency of the Collateral, or the continued solvency of the Borrower.

**REPRESENTATIONS AND WARRANTIES BY PARTICIPANT.** Participant makes the following representations and warranties to the Originating Institution:

**Independent Credit Analysis.** Participant represents and warrants that: (a) Participant has independently reviewed the Loan Documents and all other documents related thereto in the possession of Originating Institution and requested by Participant; (b) Participant has conducted, to the extent it deemed necessary, an independent investigation of Borrower, including, without limitation, an investigation relating to the creditworthiness of Borrower, and the risk involved to Participant in the advance of its funds pursuant to the Agreement; and (c) Participant has not relied upon the Originating Institution for any such investigation or assessment of risk and has based its decision to purchase a Participation Interest in the Loan solely on its own independent evaluation of the Loan, the Loan Documents, the Borrower's creditworthiness and the existence, value, and lien status of the Collateral securing the Loan.

**Investment Representations.** Participant represents and warrants that: (a) Participant does not consider the acquisition of its participation hereunder to constitute the "purchase" or "sale" of a "security" within the meaning of the Securities Act of 1933, the Securities Exchange Act of 1934 or Rule 10b5 promulgated thereunder, the Trust Indenture Act of 1939, any applicable state securities statute or law, or any rule or regulation under any of the foregoing; (b) Participant has no expectation that it will derive profits from the efforts of the Originating Institution or any third party in respect of the acquisition of Participant's participation hereunder; (c) such participation merely constitutes a commercial transaction by Participant with the Originating Institution regarding Participant's Participation Interest in the obligations of Borrower under the Loan Documents and does not represent an "investment" (as that term is commonly understood) in the Originating Institution or Borrower; (d) Participant is purchasing its participation hereunder for its own account in respect of a commercial transaction made in the ordinary course of its commercial banking business and not with a view to or in connection with any subdivision, resale, or distribution thereof; and (e) Participant is engaged in the business of entering into commercial transactions (including transactions of the nature contemplated herein and in the Loan Documents), can bear the economic risk related to the purchase of the same, and has had access to all information deemed necessary by it in making its decision whether or not to purchase the same.

**ADDITIONAL OBLIGATIONS OF ORIGINATING INSTITUTION.** As long as the Participant continues to have an ownership interest in the Loan, the Originating Institution shall promptly notify Participant should the Originating Institution learn or have knowledge of the following: (a) any change in the financial condition of the Borrower or Guarantor which may have a material adverse effect on continuation of payments under the Loan or the Loan's ultimate collectibility; (b) any material change in the value of Collateral securing the Loan; (c) any change in lien status affecting the secured Collateral; (d) any request for an increase in or substitution or exchange of Collateral securing the Loan when due.

To the extent not already available to Participant, the Originating Institution shall use its best efforts to provide Participant, promptly after the Originating Institution's receipt of Participant's written request therefor: (a) such information as is then in the Originating Institution's possession in respect of the current status of principal and interest payments under the Loan Documents and in respect of the current status of accrual of interest under the Loan Documents; (b) copies of all current financial statements then in the Originating Institution's possession in respect of Borrower and, if applicable, each Guarantor, under the Loan Documents; (c) current information then in the Originating Institution's possession as to Collateral values and lien status; and (d) other current factual information then in the Originating Institution's possession bearing on the continuing creditworthiness of Borrower or, if applicable, any Guarantor under the Loan Documents, provided that nothing contained in this paragraph shall impose any liability upon the Originating Institution for its failure to provide Participant any of such information or financial statements except for the Originating Institution's own bad faith, willful misconduct, or gross negligence.

**ORIGINATING INSTITUTION'S RELATIONSHIP TO PARTICIPANT.** The relationship between Originating Institution and Participant shall be that of a seller and purchaser of a property interest rather than a debtor-creditor relationship, joint venture, partnership, or agency relationship. The Originating Institution shall have no fiduciary obligations to Participant. However, the Originating Institution shall exercise the same degree of care and discretion in making, monitoring, administering, and enforcing the Loan as the Originating Institution would ordinarily take in making, monitoring, administering, and enforcing the Loan solely for its own account.

**LIMITATIONS ON ORIGINATING INSTITUTION'S ACTIONS.** The Originating Institution shall be entitled, at its option, from time to time and at any time, to enter into any amendment of, or waive compliance with the terms of, any Loan Documents without obtaining prior approval from Participant, so long as the Originating Institution exercises the same degree of care, skill, caution, and prudence it customarily exercises in connection with transactions for its own account; provided that, without Participant's prior written approval, which approval shall not be unreasonably withheld or delayed, the Originating Institution will not enter into or execute any such amendment or waiver, the result of which would be to extend the final maturity of the payment obligations of Borrower under the Loan Documents or to reduce the rate of interest or amount of fees payable under the Loan Documents.

**BORROWER'S DEFAULT: ENFORCEMENT.** Participant shall notify the Originating Institution and the Originating Institution shall notify Participant of any default under the Loan Documents of which it becomes actually aware. The Originating Institution will use reasonable efforts to consult with Participant regarding the actions to be taken in response to a default under the Loan Documents. The Originating Institution shall not be bound by Participant's counsel and shall be entitled to take whatever action it deems appropriate to enforce the rights and remedies accruing on account of such default.

Participant shall pay its proportionate share of all reasonable attorneys' fees and other expenses incurred by the Originating Institution in connection with enforcement of the obligations of Borrower under the Loan Documents, and Participant shall be entitled to amounts equaling its Participation Interest of any payments subsequently received by the Originating Institution with respect to such fees and expenses.

**DEFAULT BY ORIGINATING INSTITUTION.** If the Originating Institution breaches any term or condition of this Agreement, Participant shall be entitled to exercise all rights and remedies available to Participant in law or in equity to recover any loss or damages arising from the breach of this Agreement by the Originating Institution.

**INSOLVENCY OF ORIGINATING INSTITUTION.** The Originating Institution's appointment to act as the administrator of the Loan shall be terminated upon the occurrence of the following events: (a) the filing by or against Originating Institution of a petition under any provision of the bankruptcy law, or an assignment for the benefit of creditors; (b) the appointment by any public or supervisory authority of any person or firm in charge of Originating Institution or its assets; and (c) the issuance by an appropriate public monitoring or supervisory authority of a cease and desist order, or its equivalent, against Originating Institution or its directors and officers involving the safety, soundness, or financial viability of Originating Institution.

Upon termination of Originating Institution as the administrator of the Loan, Participant shall have the right to immediately notify the Borrower of such termination, directing the Borrower to forward principal, interest, fees, or other payments under the Loan directly to Participant, in sufficient amounts to satisfy the Participant's Participation Interest in the Loan. The Originating Institution shall join in this notice to the Borrower upon request by Participant.

**DEFAULT BY PARTICIPANT.** In the event Participant fails or refuses to make any payment to the Originating Institution as required under this Agreement, Participant shall be in default hereunder. Upon such default by Participant, the Originating Institution shall be entitled, but not obligated, to: (a) fund Participant's proportionate share of the advance (or continue to fund the existing balance) which is the subject of such payment; (b) earn all interest



**LOAN PARTICIPATION AGREEMENT**
(Continued)

received from the Borrower and attributable to Participant's share of the advance until reimbursed by Participant; (c) recover from Participant such amount on demand, together with interest thereon at the Federal Funds Rate per annum, for the period from the date such amount was due from Participant through the date the Originating Institution recovers such amount from Participant; and (d) if applicable, offset against Participant's Participation Interest all sums received by the Originating Institution from Borrower until reimbursed therefor by Participant. Nothing in this paragraph shall be construed as releasing, modifying, or waiving Participant's obligation to make payments to the Originating Institution as provided in this Agreement.

**INSOLVENCY OF PARTICIPANT.** Upon the occurrence of any of the following events, the Originating Institution shall have the right, but not the obligation, to repurchase Participant's Participation Interest in the Loan: (a) the filing by or against Participant of a petition under any provision of the bankruptcy law, or an assignment for the benefit of creditors; (b) the appointment by any public or supervisory authority of any person or firm in charge of Participant or its assets; and (c) the issuance by an appropriate public monitoring or supervisory authority of a cease and desist order, or its equivalent, against Participant or its directors and officers involving the safety, soundness, or financial viability of Participant. The purchase price shall be the remaining unpaid balance of Participant's Participation Interest in the Loan together with interest to Participant accrued to the date of the closing of such repurchase.

**INDEMNIFICATION.** Participant hereby agrees to indemnify and hold the Originating Institution harmless from and against Participant's Participation Interest of any and all loss, cost, liability, damages, penalties, actions, suits, and expenses which may be imposed upon, asserted against, paid, or incurred by the Originating Institution in connection with the Loan, Collateral, or the Loan Documents except and only to the extent that the same arises from the Originating Institution's own bad faith, willful misconduct, or gross negligence.

**ASSIGNMENT, TRANSFER, SUBPARTICIPATION.** The Originating Institution may assign and may grant participations in the Loan to other persons. Participant shall not sell, pledge, assign, subparticipate, or otherwise transfer its Participation Interest under the Loan without first obtaining prior written consent of the Originating Institution, which consent shall not be unreasonably withheld. The Originating Institution shall have a right of first refusal on any bona fide offer made to purchase, subparticipate, or otherwise acquire the Participant's Participation Interest in the Loan by a third party. Nothing under this section shall be construed as obligating the Originating Institution to repurchase the Participant's Participation Interest in the Loan, and nothing hereunder shall be construed as granting the Participant the right to demand the Originating Institution repurchase such Participation Interest.

**ADDITIONAL LOANS BY ORIGINATING INSTITUTION.** Participant recognizes and agrees that the Originating Institution may have other existing loans and in the future may make additional loans to the Borrower or, if applicable, any Guarantor, which may not be participated to the Participant.

Participant further recognizes and agrees that the Originating Institution shall have no obligation to attempt to collect payments under the Loan in preference and priority over the collection and/or enforcement of any other and/or additional loans by the Originating Institution to Borrower or, if applicable, any Guarantor.

The Originating Institution, however, agrees that the proceeds of all Collateral directly securing repayment of the Loan, shall be applied first to the payment of the Loan as provided in the "Application of Payments" section of this Agreement. Any excess proceeds may be applied by the Originating Institution to the payment of any other loans then owing to the Originating Institution, that may be indirectly secured by such Collateral as a result of the inclusion of a "cross-collateralization" provision in the security agreements executed in connection with the Loan in favor of the Originating Institution.

**MISCELLANEOUS PROVISIONS.**

    **Applicable Law.** This Agreement shall be governed and construed under the laws of the State of California.

    **Attorneys' Fees and Costs.** If any lawsuit or proceeding is brought by the Originating Institution or Participant to enforce the terms of this Agreement, then the unsuccessful party shall, subject to any limits under applicable law, pay the prevailing party all its court costs and reasonable attorneys' fees incurred in bringing or defending such action.

    **Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of the Agreement.

    **Counterparts.** This Agreement may be executed in multiple counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts, taken together, shall constitute one and the same Agreement.

    **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and cannot be modified or changed in any way except in writing upon the agreement of the parties hereto.

    **Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.

    **Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid, and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity, or enforceability of any other provision of this Agreement.

    **Successors and Assigns.** This Agreement shall be binding upon the parties hereto, as well as their respective legal representatives, successors, and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meaning when used in this Agreement and any associated Participation Certificates. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meaning attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meaning assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

    **Agreement.** The word "Agreement" means this Loan Participation Agreement, as this Loan Participation Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Loan Participation Agreement from time to time.

    **Borrower.** The word "Borrower" means Al's Garden Art, Inc. and includes all co-signers and co-makers under the Loan.

    **Collateral.** The word "Collateral" means and includes without limitation all property and assets granted as collateral security for the Loan, whether real or personal property or general intangibles; whether granted directly or indirectly; whether granted now or in the future; and whether granted in the form of a security interest, mortgage, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipts, lien, charge, lien or title retention contract, lease, or consignment intended as a security device, or other security or lien interest whatsoever, whether created by law, contract, or otherwise.

## LOAN PARTICIPATION AGREEMENT
### (Continued)

Page 4

**Federal Funds Rate.** The words "Federal Funds Rate" mean the rate published for that day by the Board of Governors of the Federal Reserve System as the "Federal Fund (Effective) rate" in its periodic statistical release; if no such rate is published for the day in question, the last rate so established as the "Federal Fund (Effective) rate" immediately prior to the day in question.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of the Loan.

**Loan.** The word "Loan" means a loan or loans from the Originating Institution to the Borrower evidenced by the Note.

**Loan Documents.** The words "Loan Documents" mean and include without limitation the Note, mortgages, security agreements, and all other instruments, agreements, and documents executed in connection with the Loan.

**Note.** The word "Note" means the Note executed by Borrower in the principal amount of $6,000,000.00 dated December 5, 2007, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions of the Note. The maturity date of the Note is December 5, 2017.

**Originating Institution.** The words "Originating Institution" mean Professional Business Bank, its successors, and assigns.

**Participant.** The word "Participant" means 1st Heritage Bank, its successors, and assigns.

**Participation Certificate.** The words "Participation Certificate" mean a certificate or certificates, which shall be issued by the Originating Institution to evidence Participant's participation in the Loan.

**Participation Interest.** The words "Participation Interest" mean an undivided percentage ownership interest held by Participant in the Loan and identified in the "Sale of Loan Participation Interest" paragraph of this Agreement. When reference is made to the Originating Institution's Participation Interest in the Loan, the words "Participation Interest" mean an undivided percentage ownership interest in the Loan retained by the Originating Institution.

THE ORIGINATING INSTITUTION AND THE PARTICIPATING INSTITUTION ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT, AND AGREE TO THE TERMS.

THIS AGREEMENT IS DATED DECEMBER 27, 2007.

ORIGINATING INSTITUTION:
**Professional Business Bank**

By: _____
   Edwin Fix, Sr. Vice President and C.C.O.

PARTICIPANT:
**1st Heritage Bank**

By: _____
   Adam Russell, Market President/Inland Empire

# EXHIBIT B

**FDIC**

**Federal Deposit Insurance Corporation**
1601 Bryan Street, Dallas, TX 75201

Division of Resolutions and Receiverships

**CERTIFIED MAIL 7002 2030 0000 3723 0854**
**RETURN RECEIPT REQUESTED**

October 22, 2009

Professional Business Bank
Ezra Brutzkus Gubner LLP
C/o Nicholas A. Rozansky, Esq
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

SUBJECT:    10009–FIRST HERITAGE BANK, N.A.
              NEWPORT BEACH, CA – In Receivership
              Closing Date: July 25, 2008
              Claims Bar Date: October 29, 2008
              NOTICE TO DISCOVERED CREDITOR - PROOF OF CLAIM

Dear Claimant:

On July 25, 2008 (the "Closing Date"), the Office of the Comptroller of the Currency closed FIRST
HERITAGE BANK, N.A., NEWPORT BEACH, CA, 92660 (the "Failed Institution") and appointed the
Federal Deposit Insurance Corporation (the "FDIC") as Receiver (the "Receiver").

The Receiver has discovered that you may have a claim against the Failed Institution. If, in fact, you do
not have a claim against the Failed Institution, please disregard this notice.

The Receiver previously published a notice to creditors of the Failed Institution in NEWPORT
BEACH/COSTA MESA DAILY PILOT stating that claims must be filed by the Claims Bar Date referenced
above ("Claims Bar Date").

Although the Claims Bar Date has passed, under federal law the Receiver may consider claims filed after
the Claims Bar Date if: 1) the claimant did not receive notice of the appointment of the Receiver in time to
file a claim, AND 2) the claim is filed in time to permit payment of the claim. 12 U.S.C. Section
1821(d)(5)(C). Nothing in this letter is intended to imply that the Receiver has extended the Claims Bar
Date.

However, for the Receiver to consider your claim, you must prove to the Receiver's satisfaction that you
did not have knowledge of the appointment of the Receiver in time to file a claim before the Claims Bar
Date. Therefore, you must do ALL of the following:

- Complete the enclosed Proof of Claim Form
- Sign the Proof of Claim Form
- Provide supporting documentation both regarding your claim and your lack of
  knowledge of the appointment of the Receiver (for example, evidence that
  someone was on active military duty stationed overseas at the time of the
  appointment of the Receiver)

Please submit the properly completed Proof of Claim Form and the supporting documentation to the
Receiver on or before January 20, 2010. You must return the properly completed Proof of Claim Form,
along with the supporting documentation, to the following address:

RLS7222

FDIC as Receiver of
FIRST HERITAGE BANK, N.A.
1601 Bryan Street
Dallas, TX 75201
Attention: Claims Agent

After the Receiver receives your claim, the Receiver has up to 180 days to review and determine whether to allow or disallow your claim. Pursuant to 12 U.S.C. Section 1821(d)(6), if the Receiver notifies you of the disallowance of your claim, or if you do not receive a notice of disallowance before the end of the 180-day period, you have the right to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the Receiver). Your lawsuit must be filed within 60 days after the date of the notice of disallowance by the Receiver OR within 60 days after the end of the 180-day period, **whichever is earlier**. You must file your lawsuit either in the United States District (or Territorial) Court for the District where the failed institution's principal place of business was located or in the United States District Court for the District of Columbia.

IF YOU DO NOT FILE A LAWSUIT (or continue any lawsuit commenced before the appointment of the Receiver) BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE OF YOUR CLAIM WILL BECOME FINAL AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM.   12 U.S.C. Section 1821(d)(6)(B).

If a portion of your claim is for an insured deposit, your claim is not against the Receiver but rather is against the FDIC in its "corporate" capacity as deposit insurer.  An insured depositor's rights are prescribed in 12 U.S.C. Section 1821(f) and differ from the rights described in the preceding paragraphs.

If you have any questions, please contact the undersigned at (972) 761-8671.

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR FIRST HERITAGE BANK, N.A.

By:    Claims Agent
       Claims Department

Enclosure: Proof of Claim Form

Federal Deposit Insurance Corporation as Receiver for:

10009 – FIRST HERITAGE BANK, N.A. NEWPORT BEACH, CA

(Name of Bank/Financial Institution and Location)

## PROOF OF CLAIM

SSN/Tax ID # (1) _____

The undersigned, (2)_____

(Name of person making the claim)

says that the FIRST HERITAGE BANK, N.A. _____ now in liquidation is

(Name of Bank/Financial Institution)

justly indebted to (3) Professional Business Bank _____ in the sum of

(Individual/Joint/Corporation/Partnership/Firm/Agency)

(4) _____ Dollars upon the following Claim:

| | Description of (invoice) claim: | Liability Number | Amount of Claim |
|---|---|---|---|
| C | (5) | 500000616-000 | |
| L | | | |
| A | | | |
| I | | | |
| M | | | |
| S | | Total Claim:(6) | |

The undersigned further states that he/she makes this claim on behalf of

(7) Professional Business Bank _____ .

that no part of said debt has been paid, that

(8) Professional Business Bank _____

(Individual/Joint/Corporation/Partnership/Firm/Agency)

has given no endorsement or assignment of the same or any part thereof, and that there is no set-off or

counterclaim, or other legal or equitable defense to said claim or any part thereof.

NAME (9) _____ _____

(Signature of Person making the Claim)          (Title)

FIRM _____

(If applicable)

ADDRESS (10) _____

CITY/STATE/ZIP_____

TELEPHONE NUMBER _____

The penalty for knowingly making or inviting reliance of any false, forged, or counterfeit statement, document, or thing for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation is a fine of not more than $1,000,000 or imprisonment for not more than thirty years, or both (18 U.S.C. Section 1007).

RLS7222

3

## GENERAL INFORMATION AND INSTRUCTIONS FOR
## COMPLETING A PROOF OF CLAIM FORM

This form is being sent to you in the event you believe the failed institution owes you funds for services rendered or goods purchased prior to the date of closing. If the institution does not currently owe you any money, it is not necessary for you to complete this form.

The following blanks must be completed in order for your Proof of Claim to be considered: (The numbers correspond with those located on the proof of claim form.)

1)      A company's tax identification number or an individual's social security number.

2)      Name of the person making the claim.

3)      Review this name. Make corrections as needed. Fill in name if blank.

4)      Written dollar amount of the claim (ex. One hundred and no/100.)

5)      Detailed description of what is being claimed (i.e., the invoice number, type of service being claimed, account number, etc.).

6)      Total amount of claim.  Total should NOT include interest or late fees accrued since institution closing.

7)      Review this name. Make corrections as needed. Fill in name if blank.

8)      Review this name. Make corrections as needed. Fill in name if blank.

9)      Signature of the person making claim and the title of that person if they are representing a company making a claim.

10)     The address and telephone number of the individual or company making the claim.

Should the above information be missing, your information will be entered into our tracking system, but your Proof of Claim form will be returned to you for completion.

### REQUIRED DOCUMENTATION

1)      Claims for Goods Purchased by the Former Institution: You must forward a copy of the Purchase order or other correspondence from the institution requesting the goods, a copy of your invoice and a receipt signed by the institution indicating that the goods were received.

2)      Claims for Services Rendered: You must forward a copy of the correspondence or signed initial contract sent by the institution to request your services and an invoice. In the case of legal fees, an itemized invoice must be sent indicating your prorated charges.  For appraisal services, submit proof the appraisal was completed.

**EXHIBIT C**

**Federal Deposit Insurance Corporation as Receiver for:**
**10009 – FIRST HERITAGE BANK, N.A. NEWPORT BEACH, CA**
(Name of Bank/Financial Institution and Location)

## PROOF OF CLAIM

SSN/Tax ID # (1) __26-1294998__

The undersigned, (2) __Steven T. Gubner, Esq.__
(Name of person making the claim)

says that the __FIRST HERITAGE BANK, N.A.__
(Name of Bank/Financial Institution) _____ now in liquidation is

justly indebted to (3) __Professional Business Bank__
(Individual/Joint/Corporation/Partnership/Firm/Agency) _____ in the sum of

(4) __See enclosed claim__
Dollars upon the following Claim:

| | Description of (invoice) claim | Liability Number | Amount of Claim |
|---|---|---|---|
| C | (5)See enclosure | 50000816-000 | See enclosure |
| L | | | |
| A | | | |
| I | | | |
| M | | | |
| S | | Total Claim:(6) | |

The undersigned further states that he/she makes this claim on behalf of

(7) __Professional Business Bank__

that no part of said debt has been paid, that

(8) __Professional Business Bank__
(Individual/Joint/Corporation/Partnership/Firm/Agency)

has given no endorsement or assignment of the same or any part thereof, and that there is no set-off or

counterclaim, or other legal or equitable defense to said claim or any part thereof.

NAME (9) _____
(Signature of Person making the Claim)

'09 NOV 19 ━━━━
__Outside counsel__
(Title)

FIRM __EZRA BRUTZKUS GUBNER LLP__
(if applicable)

ADDRESS (10) __21650 Oxnard St., Suite 500__

CITY/STATE/ZIP __Woodland Hills, CA 91367__

TELEPHONE NUMBER __(818) 827-9000__

The penalty for knowingly making or inviting reliance of any false, forged, or counterfeit statement, document, or thing for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation is a fine of not more than $1,000,000 or imprisonment for not more than thirty years, or both (18 U.S.C. Section 1007).

COPY

1  Steven T. Gubner – Bar No. 156593
   Larry W. Gabriel – Bar No. 68329
2  Nicholas A. Rozansky - Bar No. 219855
   **EZRA BRUTZKUS GUBNER LLP**
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA 91367
4  Telephone: 818.827.9000
   Facsimile: 818.827.9099
5  Email:    sgubner@ebg-law.com
             lgabriel@ebg-law.com
6             nrozansky@ebg-law.com

7  Attorneys for Claimant,
   PROFESSIONAL BUSINESS BANK
8

9              CLAIM OF PROFESSIONAL BUSINESS BANK,

10             A CALIFORNIA BANKING CORPORATION

11

12

13         This claim arises out of the failure of the FDIC to comply with a terms and conditions of

14   a written contract ("Loan Participation Agreement" or "Loan") entered into between Professional

15   Business Bank ("PBB") and First Heritage Bank, N.A. ("Heritage"). A material term of the

16   written Loan Participation Agreement is the requirement that Heritage not sell, pledge, assign,

17   subparticipate, or otherwise transfer its Participation Interest under the Loan without first

18   obtaining prior written consent of PBB and that PBB is to have a right of first refusal on any

19   bona fide offer made to purchase, subparticipate, or otherwise acquire Heritage's interest in the

20   Loan by a third party. After Heritage was closed by the Office of the Comptroller of the

21   Currency (OCC) the FDIC was named Receiver of Heritage ("FDIC/Heritage") and the

22   FDIC/Heritage assumed the right to sell the assets of FDIC/Heritage. On or about January 12,

23   2009, without first advising PBB and without offering PBB the opportunity to purchase

24   Heritage's interest in the Loan (its right of first refusal), and in violation of the written Loan

25   Participation Agreement, the FDIC sold Heritage's interest in the Loan to Commerce First

26   Financial, Inc. ("CFF") at a 50% discount.

27

28

-1-

1    PBB contends that in selling this "asset" the FDIC was obligated to abide by the terms of
2   the written Loan Participation Agreement and failed to do so, thus breaching its contractual
3   obligations owed to PBB under the terms of the written Loan Participation Agreement. PBB is
4   informed by CFF that it paid the FDIC $1,471,298.46 for Heritage's interest in the Loan. CFF
5   has refused repeated requests from PBB that PBB be permitted to exercise its contractual right of
6   first refusal. As a result, PBB claims a right to purchase the interest in the Loan for the amount
7   paid by CFF. Alternatively PBB claims it has been damaged as a result of the FDIC's breach.
8   The amount of the damages sought, and the amount of PBB's claim the difference between the
9   amount CFF paid for the Participation Interest ($1,471,298.46), and the amount that is actually
10   collected against the underlying loan.

11

12    The particulars of the Claim are presented in a cross-complaint, which was filed against
13   the FDIC, subsequently dismissed without prejudice so that PBB could pursue its administrative
14   remedies. A copy of the cross-complaint previously filed is attached hereto, marked Exhibit "A",
15   and is expressly incorporated herein by reference as though fully set forth.

16    Wherefore, PBB requests that the FDIC acknowledge the Claim of PBB and that the
17   FDIC either (1) tender to PBB Heritage's interest in the Loan for the amount paid by CFF, or (2)
18   that PBB's claim be approved as the difference between the amount CFF paid for the
19   Participation Interest ($1,471,298.46), and the amount that is actually collected against the
20   underlying loan, and (3) pay PBB's attorneys' fees and costs as provided for in the Loan
21   Participation Agreement.

22   Dated: November 16, 2009            EZRA | BRUTZKUS | GUBNER LLP

23

24

25                                      By:

                                        STEVEN T. GUBNER
26                                      LARRY W. GABRIEL
                                        NICHOLAS A. ROZANSKY
27                                      Attorneys for Claimant
                                        PROFESSIONAL BUSINESS BANK
28

-2-

ORIGINAL FILED

AUG 03 2009

LOS ANGELES
SUPERIOR COURT
NORTHEAST DISTRICT

1  Steven T. Gubner - Bar No. 156593
   Larry W. Gabriel – Bar No. 68329
2  Nicholas A. Rozansky - Bar No. 219855
   **EZRA BRUTZKUS GUBNER LLP**
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA  91367
4  Telephone:  818.827.9000
   Facsimile:  818.827.9099
5  Email:       sgubner@ebg-law.com .
                lgabriel@ebg-law.com
6               nrozansky@ebg-law.com

7  Attorneys for Defendant/Cross-Complainant,
   PROFESSIONAL BUSINESS BANK
8

9            SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

10                              PASADENA DIVISION

11

12  COMMERCE FIRST FINANCIAL, INC., a          Case No. GC043243
    Texas corporation,
13
                                               CROSS-COMPLAINT FOR:
14                      Plaintiff,
                                               1.  BREACH OF CONTRACT;
15                                             2.  INTENTIONAL INTERFERENCE
         vs.                                       WITH PROSPECTIVE ECONOMIC
16                                                 ADVANTAGE;
                                               3.  NEGLIGENT INTERFERENCE
17  PROFESSIONAL BUSINESS BANK, a                  WITH PROSPECTIVE ECONOMIC
    California corporation, and DOES 1 through     ADVANTAGE;
18  100, inclusive,                            4.  DECLARATORY RELIEF;
                                               5.  SPECIFIC PERFORMANCE
19                      Defendants.

20

21  PROFESSIONAL BUSINESS BANK, A
22  California Banking Corporation,

23
                        Cross-Complainant,
24

25       vs.

26
    FEDERAL DEPOSIT INSURANCE
27  CORPORATION in its capacity as Receiver
    for First Heritage Bank, N.A., and in its
28

1  corporate capacity; COMMERCE FIRST
   FINANCIAL, INC., a Texas limited liability
2  company, and ROES 1 through 50, inclusive,

3

                    Cross-Defendants.
4

5

6      Cross-Complainant, PROFESSIONAL BUSINESS BANK (hereinafter "PBB" and/or

7  "Cross-Complainant"), alleges as follows:

8                              **PARTIES**

9      1.    PBB is, and at all material times was, a California Banking Corporation, qualified

10 to do, and doing, business in the State of California.

11     2.    PBB is informed and believes, and thereon alleges, that Cross-Defendant,

12 FEDERAL DEPOSIT INSURANCE CORPORATION ("FDIC") is an independent agency of

13 the Federal Government that, *inter alia*, insures deposits and oversees failing financial

14 institutions, which operates in all States. The FDIC is the receiver of and successor-in-interest to

15 First Heritage Bank, N.A. The FDIC is sued in its corporate capacity ("FDIC CORPORATE")

16 and in its capacity as the Receiver of First Heritage Bank, N.A. ("FDIC-RECEIVER"). This

17 Cross-Complaint uses "FDIC" to refer to FDIC-RECEIVER and FDIC-CORPORATE

18 collectively.

19     3.    PBB is informed and believes and thereon alleges that Cross-Defendant,

20 COMMERCE FIRST FINANCIAL, INC. (hereinafter "CFF") is a Texas limited liability

21 company organized and operating under the laws of the State of Texas and is doing business in

22 the State of California.

23     4.    PBB is informed and believes and thereon alleges that the true names and

24 capacities of cross-defendants named herein as ROES 1 through 50, whether individual,

25 corporate, associate, or otherwise, are unknown to PBB, who therefore sues said cross-

26 defendants by fictitious names. PBB is informed and believes, and thereon alleges, that each of

27 the cross-defendants designated herein as ROE is legally responsible in some manner for the

28 occurrences and/or omissions herein alleged, and that PBB's damages as herein alleged were

1   proximately caused by the acts or omissions of said cross-defendants, and each of them. PBB

2   will amend this Cross-Complaint to show the true names and capacities of the cross-defendants

3   named herein as ROES 1 through 50 when same have been ascertained.

4        5.     PBB is informed and believes and thereon alleges that at all times mentioned

5   herein; each cross-defendant was acting as the agent, employee, principal, officer, partner, joint

6   venturer, servant, director or other representative of one of more of the remaining cross-

7   defendants, and, in committing the acts and/or omissions mentioned herein, was acting within the

8   course and scope of such employment, agency, partnership, joint venture, or other relationship,

9   and with the knowledge and consent of the remaining cross-defendants.

10                     **VENUE**

11        6.     Venue is proper in the State of California, County of Los Angeles because, among

12   other things, the contracts at issue were entered into and to be performed in the State of

13   California, County of Los Angeles; the acts alleged herein occurred in whole or in part in the

14   County of Los Angeles; and the contract at issue subjects the parties herein to California Law.

15                 **GENERAL ALLEGATIONS**

16        7.     On or about December 5, 2007, PPB entered into a Loan Agreement dated

17   December 5, 2007 (the "2007 Loan Agreement") pursuant to which PPB agreed to extend to Al's

18   Garden Art, Inc. a loan in the original amount of $6,000,000. ("Al's Garden Loan")

19        8.     On or about December 27, 2007, PBB and First Heritage Bank, N.A. ("Heritage")

20   entered to a Loan Participation Agreement (the "Loan Participation Agreement"), pursuant to

21   which PPB sold, and Heritage purchased a 50% interest in the Al's Garden Loan originated by

22   PBB ("Heritage's Participation Interest.") A true and correct copy of the Loan Participation

23   Agreement is attached as Exhibit "A," the terms of which are incorporated herein by this

24   reference as though fully set forth herein.

25        9.     A material term of the Loan Participation Agreement is the following:

26     "Participant [Heritage] shall not sell, pledge, assign, subparticipate, or otherwise

27     transfer its Participation Interest under the Loan without first obtaining prior
written consent of the Originating Institution [PBB], which consent shall not be

28     unreasonably withheld. The Originating Institution shall have a right of first

1    refusal on any bonafide offer made to purchase, subparticipate, or otherwise
2    acquire the Participant's Participation Interest in the Loan by a third party."

3

4        10.    On or about July 25 2008, Heritage was closed by the Office of the Comptroller
5    of the Currency (OCC). Subsequently, the FDIC was named Receiver of Heritage
6    ("FDIC/Heritage") and the FDIC/Heritage assumed the right to sell the assets of FDIC/Heritage.
7        11.    On information and belief, CFF contends that on January 9, 2009, it purchased
8    Heritage's Participation Interest from the FDIC/Heritage, thereby acquiring Heritage's interest in
9    the Loan Participation Agreement. Upon information and belief, CFF purchased Heritage's
10   Participation Interest from the FDIC at a near 50% discount.
11       12.    PBB was not advised of the sale nor did the FDIC request the consent of PPB to
12   sell its interests in the Al's Garden Loan nor offer to sell its interest in the Al's Garden Loan to
13   PPB as required to do so under the terms of the Loan Participation Agreement, prior to selling its
14   interest in the Al's Garden Loan to CFF.

15                              **FIRST CAUSE OF ACTION**

16                  **[Breach of Contract against FDIC and Roes 1 through 20]**

17       13.    PBB realleges and incorporates by this reference, as though fully set forth herein,
18   each and every allegation in paragraphs 1 through 12 above.
19       14.    PBB has at all times performed the terms of the Loan Participation Agreement in
20   the manner specified therein, save and except as excused from such performance by the failure of
21   the FDIC to perform its obligations under the terms of the Loan Participation Agreement.
22       15.    Cross-Defendants FDIC and ROES 1-20 (the "FDIC Cross-Defendants")
23   breached their obligations to PBB under the terms of the Loan Participation Agreement as set
24   forth in paragraphs 11 and 12 above.
25       16.    As a direct and proximate result of the FDIC CROSS-DEFENDANTS' failure
26   and refusal to perform their obligations under the Loan Participation Agreement, PBB has been
27   damaged in an amount to be proved at the time of trial in this matter in excess $1,500,000.

28

1   business advantage, PBB has been damaged in an amount according to proof, but believed to
2   exceed $1,500,000.

3       24.    The acts of the CFF Cross-Defendants were willful, wanton, and oppressive and
4   were undertaken with intent to defraud. Accordingly, PBB is entitled to recover exemplary and
5   punitive damages under Civil Code section 3294, in an amount to be deemed sufficient by the
6   trier of fact to punish and make an example of the CFF Cross-Defendants, and to deter such
7   conduct in the future.

8   <center>**THIRD CAUSE OF ACTION**</center>

9   <center>**[Negligent Interference with Prospective Economic Advantage**</center>
10  <center>**against CFF and Roes 21 through 40]**</center>

11      25.    PBB realleges and incorporates by this reference, as though fully set forth herein,
12  each and every allegation in paragraphs 1 through 24 above.

13      26.    At the time the CFF Cross-Defendants purportedly acquired Heritage's Interest in
14  the Loan Participation Agreement, as referenced hereinabove, an existing business relationship
15  existed between PBB and the FDIC/Heritage.

16      27.    A duty of care existed between PBB and the CFF Cross-Defendants whereby the
17  CFF Cross-Defendants were obligated to, at a minimum, review the Loan Participation
18  Agreement and inquire of PBB whether it had been afforded its right of first refusal thereunder.

19      28.    On information and belief, the CFF Cross-Defendants wrongfully purchased
20  Heritage's Participation Interest in the Loan Participation Agreement at nearly a 50% discount,
21  without affording PBB its right of first refusal and thus negligently interfered with PBB's
22  prospective economic advantage.

23      29.    As a proximate result of CFF's wrongful purchase of Heritage's Participation
24  Interest in the Loan Participation Agreement, and interference with PPB's prospective economic
25  advantage, PBB has been damaged in an amount according to proof, but believed to exceed
26  $1,500,000.

27

28

1

2

## FOURTH CAUSE OF ACTION

[Declaratory Relief against all Cross-Defendants]

3      30.    PBB realleges and incorporates by this reference, as though fully set forth herein,
4   each and every allegation contained in paragraphs 1 through 29 above.

5      31.    An actual controversy has arisen and now exists between PBB, on the one hand,
6   and the Cross-Defendants, on the other hand, concerning the Agreement and whether CFF can
7   participate therein without PBB first being afforded its right of first refusal.  PBB contends that
8   the Agreement requires that it be afforded the right of first refusal with respect to the acquisition
9   of Participant's Participation Interest in the Al's Garden Loan.  Conversely, CFF contends that it
10  properly purchased the Participant's Participation Interest, and therefore succeeded to the same
11  rights Heritage had under the Loan Participation Agreement, notwithstanding the fact that PBB
12  was not afforded its right of first refusal.

13     32.    PBB desires a determination that CFF's purported acquisition of the Participant's
14  Participation Interest was not lawful because PBB was not afforded its right of first refusal under
15  the Loan Participation Agreement and CFF cannot participate in the Loan Participation
16  Agreement unless and until PBB is extended the right expressly provided under the Loan
17  Participation Agreement, to acquire Participant's Participation Interest.  PBB seeks a further
18  declaration that CFF is entitled to assume Participant's Participation Interest only if PBB is
19  afforded the right of first refusal mandated by the Loan Participation Agreement, and formally
20  opts not to exercise it.

21     33.    Moreover, PBB desires a declaration that any transaction consummated between
22  CFF and the Federal Deposit Insurance Corporation relating to participation in the Agreement is
23  null and void and of no force and effect as such a transaction would necessarily have violated the
24  terms of the Loan Participation Agreement, unless and until PBB is given the opportunity to
25  exercise its right of first refusal and formally declines to exercise it..

26     34.    Finally, PBB seeks a declaration that it be given the opportunity to exercise its
27  right of first refusal under the terms of the Loan Participation Agreement.

28

**FIFTH CAUSE OF ACTION**

[Specific Performance against Cross-Defendants FDIC and CFF and Roes 1 through 50]

35.    PBB realleges and incorporates by this reference, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 34 above.

36.    Cross-Defendants, and each of them, through their conduct, have failed to comply with the Agreement in that they have not afforded PBB the opportunity to exercise its right of first refusal.

37.    PBB has performed all conditions, covenants, and promises required of it to be performed in accordance with the terms and conditions of the Agreement, except as prevented or excused by the conduct of Cross-Defendants.

38.    Cross-Defendants, FDIC and CFF, have refused and failed to allow PBB to exercise its right of first refusal as required by the Loan Participation Agreement.

39.    PBB is informed and believes, and thereon alleges, that as a result of Cross-Defendants' refusal to permit PBB to exercise its right of first refusal, PBB has suffered consequential damages according to proof at trial.

40.    PBB does not have an adequate remedy at law and therefore seeks an order of this court requiring the Cross-Defendants to comply with the terms and conditions of the Loan Participation Agreement.

**PRAYER**

WHEREFORE, Cross-Complainant, PROFESSIONAL BUSINESS BANK, prays for judgment as follows:

On the First Cause of Action:

1.    For compensatory damages according to proof at trial;

2.    For general damages according to proof at trial;

On the Second Cause of Action:

3.    For compensatory damages according to proof at trial;

4.    For general damages according to proof at trial;

5.    For exemplary and punitive damages, in an amount to be proved at trial;

On the Third Cause of Action:

6.    For compensatory damages according to proof at trial;

7.    For general damages according to proof at trial;

On the Fourth Cause of Action:

8.    For a judicial determination that CFF's purported acquisition of the Participant's Participation Interest was not lawful because PBB was not afforded its right of first refusal under the Agreement;

9.    For a declaration that CFF cannot participate in the Agreement unless and until PBB is extended the right expressly provided under the Agreement, to acquire Participant's Participation Interest;

10.    For a declaration that CFF is entitled to assume Participant's Participation Interest only if PBB is afforded the right of first refusal mandated by the Agreement, and formally opts not to exercise it;

11.    For a declaration that any transaction consummated between CFF and the Federal Deposit Insurance Corporation relating to participation in the Agreement is null and void and of no force and effect as such a transaction would necessarily have violated the terms of the Agreement, unless and until PBB is given the opportunity to exercise its right of first refusal and formally declines to exercise it;

12.    For a declaration that PBB be given the opportunity to exercise its right of first refusal under the terms of the Agreement;

On the Fifth Cause of Action:

13.    That Cross-Defendants offer PBB its purported rights under the Agreement on the identical terms that CFF purchased its alleged interest in the Agreement;

14.    For injunctive relief precluding Cross-Defendants from selling any interest in the Agreement;

15.    For consequential damages according to proof;

1  16.  For reasonable attorney's fees as permitted under the Agreement;

2  On All Causes of Action

3  17.  For reasonable attorneys' fees and costs of suit herein; and

4  18.  For such other and further relief as the Court deems just and appropriate under the

5  circumstances.

6  Dated: August 1, 2009                       EZRA | BRUTZKUS | GUBNER LLP

7

8

9  By

10                                            STEVEN T. GUBNER
                                              LARRY W. GABRIEL
11                                            NICHOLAS A. ROZANSKY
                                              Attorneys for Defendant/Cross-Complainant
                                              PROFESSIONAL BUSINESS BANK

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT D**



**Federal Deposit Insurance Corporation**
1601 Bryan Street, Dallas, TX 75201

Division of Resolutions and Receiverships

**CERTIFIED MAIL 7009 3410 0000 3573 2246**
**RETURN RECEIPT REQUESTED**

April 30, 2010

Professional Business  Bank
c/o Steven T. Gubner, Esq.
Ezra Brutzkus Gubner, LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

SUBJECT:    10009–FIRST HERITAGE BANK, N.A.
            NEWPORT BEACH, CA – In Receivership
            <u>NOTICE OF DISALLOWANCE OF CLAIM</u>

Dear Claimant:

The Receiver of  FIRST HERITAGE BANK, N.A. has reviewed your claim against the receivership.  After a thorough review of your filed claim along with your supporting documentation, the Receiver has determined to disallow your claim for the following reason(s) :

> The claim is Disallowed because the damages were not fixed and certain at the date of the appointment of the Receiver.

Pursuant to 12 U.S.C. Section 1821 (d) (6), if you do not agree with this disallowance, you have the right to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the Receiver), in the United States District (or Territorial) Court for the District within which the failed institution's principal place of business was located or the United States District Court for the District of Columbia within 60 days from the date of this notice.

**IF YOU DO NOT FILE A LAWSUIT** (or continue any lawsuit commenced before the appointment of the Receiver) **BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL, YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM. 12 U.S.C. Section 1821(d)(6)(B).**

However, if a portion of your claim is for an insured deposit, your claim is not against the Receiver but rather is against the FDIC in its "corporate" capacity as deposit insurer.  An insured depositor's rights are prescribed in 12 U.S.C. Section 1821(f) and differ from the rights described in the preceding paragraphs.

If you have any questions about this letter, please contact a Claims Agent at (972) 761-8641.

Sincerely,

Claims Agent
Claims Department

RLS7218