1  Michael A. Angel (Bar No. 59085)
   mangel@mmhllp.com
2  Zachary J. Brown (Bar No. 241837)
   zbrown@mmhllp.com
3  MESERVE, MUMPER & HUGHES LLP
4  300 South Grand Avenue, 24th Floor
   Los Angeles, California 90071-3185
5  Telephone:  (213) 620-0300
   Facsimile:   (213) 625-1930
6
7  Attorneys for Defendant
   FEDERAL DEPOSIT INSURANCE
8  CORPORATION AS RECEIVER FOR
   FIRST HERITAGE BANK, N.A.
9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12  PROFESSIONAL BUSINESS BANK,      ) Case No. CV10-04614 GAF (AGRx)
13  a California Corporation,          )
                                       )
14              Plaintiff,             )
                                       )
15       vs.                          ) **FDIC-RECEIVER'S REPLY**
                                       ) **MEMORANDUM IN SUPPORT**
16  FEDERAL DEPOSIT INSURANCE          ) **OF MOTION TO DISMISS**
    CORPORATION in its Capacity as     )
17  Receiver for First Heritage Bank, N.A. )
18  and DOES 1 through 10, inclusive,  )
                                       ) Date:  September 27, 2010
19              Defendants.            ) Time: 9:30 a.m.
                                       ) Ctrm: 740
20

21       Defendant  FEDERAL  DEPOSIT  INSURANCE  CORPORATION  AS

22  RECEIVER FOR FIRST HERITAGE BANK, N.A. ("FDIC-Receiver") hereby

23  submits its reply memorandum in support of its motion to dismiss all claims which

24  Plaintiff PROFESSIONAL BUSINESS BANK ("PBB") has asserted against it in

25  these proceedings pursuant to Fed.R.Civ.P 12(b)(1) and 12(b)(6).

26  / / /

27  / / /

28  / / /

LAW OFFICES
**MESERVE,**
**MUMPER &**
**HUGHES LLP**

113358.1                          – 1 –

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   Overview

PBB's opposition fails to overcome FDIC-Receiver's authority to transfer the participation asset pursuant to 12 U.S.C. § 1821(d)(2)(G)(i)(II) without any approval, assignment or consent with respect to such transfer. Notwithstanding this language, PBB insists the contract "right of first refusal" can be enforced against FDIC-Receiver just as the right could once have been enforced against First Heritage Bank. Because FDIC-Receiver failed to honor the right of first refusal, PBB argues, FDIC-Receiver's sale of the subject participation asset gave rise to a claim for breach of contract. PBB's misplaced reliance on *Sharpe v. FDIC*, 126 F.3d 1147 (9th Cir. 1997), illustrates the logical inconsistency of its contention that in order to transfer the participation asset under § 1821(d)(2)(G)(i)(II), FDIC-Receiver was required to repudiate the contract and pay damages under 12 U.S.C. § 1821(e), a provision of FIRREA which governs the FDIC's repudiation of contracts. PBB's argument is based on a misunderstanding of the FDIC's powers under FIRREA's provisions governing receivership asset disposition and contract repudiation.

## II.   FDIC-Receiver Had No Obligation to Repudiate the Participation Agreement

Under FIRREA, FDIC-Receiver has discretion to repudiate contracts it inherits from a failed bank if performance would be burdensome and repudiation would promote the orderly administration of the failed bank's affairs. *See* 12 U.S.C. §§ 1821(e)(1)(B) and (C). FIRREA permits parties who are injured by FDIC-Receiver's repudiation to recover limited damages. 12 U.S.C. § 1821(e)(3)(A)(i). By limiting the FDIC's damages, FIRREA makes repudiation less expensive for FDIC-Receiver, thereby increasing the recovery of a failed bank's uninsured depositors, creditors and shareholders.

/ / /

LAW OFFICES
**MESERVE,
MUMPER &
HUGHES LLP**

113358.1

– 2 –

1    For example, if FDIC-Receiver were to conclude that its performance under a
2    failed bank's lease agreement would reduce the recovery of receivership
3    stakeholders without providing a sufficient benefit to the receivership estate, then
4    FDIC-Receiver could repudiate such an agreement. Under FIRREA's repudiation
5    provisions, the landlord's damages remedy would be limited to rent due and owing
6    at the time of the repudiation, as opposed to damages for lost profit over the duration
7    of the lease term. *See 1185 Ave. of Am. Assoc. v. RTC*, 22 F.3d 494, 498 (2d Cir.
8    1994). When FDIC-Receiver repudiates a contract, the repudiation extinguishes a
9    counterparty's obligation to perform and only the damages remain to be determined.
10   *See Monrad v. FDIC*, 62 F.3d 1169, 1172 (9th Cir. 1995).

11   In this case the participation agreement gave FDIC-Receiver a right to receive
12   an income stream from PBB. The participation interest was therefore an asset that
13   FIRREA required the FDIC to sell for the benefit of the receivership under
14   § 1821(d)(2)(G)(i)(II), not a burdensome obligation which the FDIC would
15   repudiate under § 1821(e). In maximizing recovery for the receivership, FDIC-
16   Receiver would not extinguish PBB's obligation and cut off the income stream. Nor
17   would it make sense to require FDIC-Receiver to repudiate the contract because of
18   its unwillingness to honor PBB's claimed right of first refusal in transferring the
19   asset under § 1821(d)(2)(G)(i)(II). Under such a scenario FDIC-Receiver would be
20   required to pay damages to PBB under § 1821(e) and would not receive valuable
21   consideration from a transfer of its interest to a third party because it would have
22   no interest left to sell. Congress did not intend such a nonsensical result when it
23   passed FIRREA.

24

25   **III.  FDIC-Receiver Transferred the Participation Asset as Authorized by Law**

26   PBB makes little effort to reconcile its position with the plain language of
27   FIRREA, which expressly authorizes FDIC-Receiver's sale of the participation asset
28   without any "approval, assignment, or consent." 12 U.S.C. § 1821(d)(2)(G)(i)(II).

LAW OFFICES
**MESERVE,
MUMPER &
HUGHES LLP**

113358.1                                       – 3 –

FDIC-RECEIVER'S REPLY IN
SUPPORT OF MOTION TO DISMISS

1  Rather than address the breadth of the FDIC's power under § 1821(d)(2)(G)(i)(II) to

2  dispose of receivership assets, PBB simply dismisses FDIC-Receiver's discussion of

3  its asset disposition function as a "present[ation] of 'boiler-plate' authorities."

4  Opposition, p.5.

5      FIRREA authorizes FDIC-Receiver's transfer of assets without third party

6  consent for the same reason FIRREA facilitates FDIC-Receiver's repudiation of

7  burdensome contracts. Both provisions help the FDIC manage the affairs of insolvent

8  institutions as efficiently as possible. The two provisions do not conflict but rather

9  coexist to maximize the FDIC's ability to resolve receivership assets.

10     As FDIC-Receiver has shown in its moving papers, the Ninth Circuit's construction

11  of § 1821(d)(2)(G) is dispositive of PBB's claims. In *Sahni*, the court determined that

12  § 1821(d)(2)(G) gives the FDIC a power to sell receivership assets which preempts

13  inconsistent rights under state law. *See Sahni v. Am. Diversified Partners*, 83 F.3d 1054,

14  1059 (9th Cir. 1996) (noting that "[b]ecause Congress specifically exempted the

15  FDIC from having to obtain any consent when effectuating the sale…of receivership

16  assets, [the plaintiff's claimed right of first refusal under California's Corporations

17  Code] is preempted in this case"). The fact that *Sahni* adjudicated legal questions

18  which are almost identical to the questions presented by this case prevents PBB from

19  distinguishing the *Sahni* precedent.

20     PBB's heavy reliance upon *Sharpe v. FDIC*, 126 F.3d 1147 (9th Cir. 1997), is

21  unpersuasive, as *Sharpe* is neither factually nor legally on point.[1] *Sharpe* does not

22

23     [1] In fact, PBB's opposition brief is a compendium of paragraphs lifted almost

24  verbatim from the *Sharpe* opinion without proper attribution. *See, e.g.*, Opposition, p.4,
   lines 3 to 11, and *Sharpe,* 126 F.2d at 1152; Opposition, p.4, line 12 to p.5, line 2, and

25  *Sharpe* at 1153; Opposition, p. 4, lines 9 to 13, and *Sharpe* at 1155. These are only a few

26  examples of the pervasive copying in the opposition. This Court has recognized that such
   wholesale copying of the language of a court opinion without attribution is "contemptible"

27  and constitutes "intellectual dishonesty." *Marques v. MortgageIT, Inc.*, 2009 WL 4480269,

28  *4-5 (C.D. Cal. 2009).

LAW OFFICES
**MESERVE,
MUMPER &
HUGHES LLP**

113358.1

– 4 –

FDIC-RECEIVER'S REPLY IN
SUPPORT OF MOTION TO DISMISS

1   address FDIC-Receiver's asset disposition authority under FIRREA. In *Sharpe*, the

2   plaintiffs and a bank had reached a court-approved settlement of litigation in

3   which—on a specific date that happened to coincide with the last day the bank

4   would be in business—the bank agreed to pay the plaintiffs $510,000 by wire

5   transfer; in consideration for the settlement money, the plaintiffs agreed to reconvey

6   an interest in real property to the bank. The plaintiffs gave the bank a deed of trust

7   on the day of the exchange, but instead of transferring the money by wire as the

8   agreement required (which would have been the equivalent of a cash payment), the

9   bank gave the plaintiffs cashier's checks. *Id* at 1150-51. Later that day, regulators

10  closed the bank and appointed the FDIC as its receiver. The receiver refused to

11  honor the failed bank's cashier's checks, but the receiver nevertheless recorded the

12  plaintiffs' deed of trust. The Ninth Circuit found that FIRREA's requirement of

13  exhaustion of administrative remedies was inapplicable under those particular

14  circumstances. *Id.* at 1156.

15      *Sharpe* does not consider the ramifications of § 1821(d)(2)(G) at all and thus it

16  is entirely inapposite to this case. The Ninth Circuit has described *Sharpe* as "an

17  unusual case" in which the plaintiffs were "parties to a contract they fully

18  performed." *McCarthy v. FDIC*, 348 F.3d 1075, 1078 (9th Cir. 2003). In *Sharpe*,

19  there was no dispute that the plaintiffs had fully satisfied their contractual

20  obligations. All that remained to be done under the contract was the transfer of

21  settlement funds, but the receiver denied having a duty to make payment in full

22  despite the fact that it recorded the reconveyance of the plaintiffs' deed of trust.

23  Thus nothing in *Sharpe* supports PBB's argument that in order to transfer the

24  participation asset under § 1821(d)(2)(G)(i)(II), FDIC-Receiver had to repudiate the

25  contract and pay damages to PBB under 12 U.S.C. § 1821(e).

26  / / /

27  / / /

28  / / /

LAW OFFICES
**MESERVE,
MUMPER &
HUGHES LLP**

113358.1

– 5 –

1    The essence of this suit is that PBB seeks to avoid its contractual obligation to
2  share the recovery on the defaulted Al's Garden Art loan in accordance with the
3  participation agreement. As the new participant, Commerce First Financial has been
4  compelled to file suit against PBB to recover its share of the proceeds from the sale
5  of Al's Garden Art's collateral (in an action entitled *Commerce First Fin., Inc. v.*
6  *Prof'l Bus. Bank*, L.A. Cnty. Super. Ct. Case No. GC043243, June 25, 2009). As
7  matters now stand, PBB is not required to pay any more money to the new
8  participant than it would have paid First Heritage or FDIC-Receiver. Not content
9  with receiving the benefit it bargained for, PBB now seeks a windfall that would
10 diminish the assets available for distribution to receivership creditors who bear no
11 responsibility for the bank's insolvency. PBB is not a creditor of First Heritage
12 Bank, but is rather a debtor, and it is not entitled to prevent legitimate creditors from
13 maximizing their recovery from the receivership.

14

15 **IV.  FIRREA Bars the Equitable Remedies Sought by PBB**

16    Failing again to distinguish any of the case law that FDIC-Receiver cited in its
17 moving papers, PBB contends that the prohibition of equitable relief imposed by
18 12 U.S.C. § 1821(j) should not operate in this case because FDIC-Receiver has
19 exceeded the limits of its statutory authority. To support its argument, PBB cites the
20 following language (Opposition, p.6) from an opinion of the D.C. Circuit: "Section
21 1821(j) shields only 'the exercise of *powers or functions*' Congress gave to the
22 FDIC; the provision does not bar injunctive relief when the FDIC has acted or
23 proposes to act beyond, or contrary to, its statutorily prescribed, constitutionally
24 permitted, powers or functions." *Nat'l Trust for Historic Pres. v. FDIC*, 995 F.2d
25 238, 240 (D.C. Cir. 1993) (emphasis in original). Taking this language out of
26 context, PBB argues that this quote implies that the *National Trust* court held
27 FIRREA does not preclude a grant of equitable relief against the FDIC.
28 / / /

LAW OFFICES
**MESERVE,
MUMPER &
HUGHES LLP**

113358.1                            – 6 –

FDIC-RECEIVER'S REPLY IN
SUPPORT OF MOTION TO DISMISS

1    In fact, the D.C. Circuit in *National Trust* affirmed the trial court's dismissal of

2  an action to enjoin the FDIC from selling a receivership asset pursuant to § 1821(j).

3  Immediately after the sentence cited by PBB, the opinion continues:

4
>    In liquidating assets it has obtained pursuant to 12 U.S.C. § 1823,
5
>    however, the FDIC is acting squarely within its statutory 'powers and
6
>    functions,' and surely not in conflict with any constitutional norm. We
7
>    do not think it possible, in light of the strong language of § 1821(j),
>    to interpret the FDIC's 'powers' and 'authorities' to include the
8
>    limitation that those powers be subject to…any and all other federal
9
>    laws. While Congress has included such provisos in some statutes
10
>    immunizing agency action from outside second-guessing…we see no
11
>    such limitation in § 1821(j). In disposing of the assets of a bank, the
12
>    FDIC is performing a routine 'receivership' function that § 1821(j)
13
>    unequivocally removes from judicial restraint. *Nat'l Trust*, 995 F.2d
>    at 240.
14

15    PBB also cites *Far West Federal Bank* as an example of a contract repudiation

16  case where the Ninth Circuit held an award of equitable relief against the FDIC was

17  not barred by FIRREA. Opposition, pp.4-5. But PBB neglected to explain that *Far*

18  *West Federal Bank* arose from an agreement with the FDIC acting in its capacity as

19  corporate deposit insurer and regulator, not in its legally distinct capacity as receiver

20  for a failed financial institution. *Far W. Fed. Bank v. OTS,* 119 F.3d 1358, 1362 (9th

21  Cir. 1994). *Far West* does not address the enforceability of rights of first refusal, the

22  FDIC's authority under FIRREA to dispose of receivership assets, or FIRREA's

23  prohibition of the award of any equitable remedies against FDIC-Receiver.

24    FDIC-Receiver was obviously performing a statutory receivership function when

25  it sold the participation asset which is the subject of this litigation. Since § 1821(j)

26  prohibits the Court from restraining the FDIC's exercise of receivership powers or

27  functions, the Court lacks jurisdiction to grant the equitable relief sought by PBB.

28  / / /

LAW OFFICES
**MESERVE,**
**MUMPER &**
**HUGHES LLP**

113358.1                                     – 7 –

## V.    PBB Should Be Denied Leave to Conduct Discovery or Amend the Complaint

Even though PBB agrees there are no disputed facts in this case (Opposition, p.3), PBB concludes its brief with a request for leave to obtain discovery of "facts supporting the jurisdictional allegations in the Complaint" and PBB warns it would be an "abuse of discretion" for the Court to grant FDIC-Receiver's motion with prejudice. Opposition, p.7.

PBB's opposition has appropriated whole passages of a published appellate court opinion without attribution. PBB lacks sufficient credibility for the court simply to accept its word that discovery would yield evidence which could support a cognizable claim. In the absence of any persuasive explanation from PBB as to how the defects of the Complaint might be cured by amendment, it is proper for the Court to deny PBB leave to amend. *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1298 (9th Cir. 1998).

## VI.   Conclusion

For all of the foregoing reasons, and for the reasons set forth in its moving papers, FDIC-Receiver respectfully requests that the Court grant its motion to dismiss PBB's claims with prejudice pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

Dated: September 13, 2010

MESERVE, MUMPER & HUGHES LLP
Michael A. Angel
Zachary J. Brown

By:  /s/  MICHAEL A. ANGEL

Attorneys for Defendant
FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
FIRST HERITAGE BANK, N.A.

LAW OFFICES
**MESERVE,
MUMPER &
HUGHES LLP**

113358.1

– 8 –

FDIC-RECEIVER'S REPLY IN
SUPPORT OF MOTION TO DISMISS